```
                    UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF NEW YORK
                        POUGHKEEPSIE DIVISION


In Re                         *   Case No. 11-37738 (CGM)
                              *
                              *   Poughkeepsie, New York
      JOSEPH LIPSCHITZ,       *   April 3, 2012
                              *
                  Debtor.     *
                              *
* * * * * * * * * * * * * * * *
```

```
            TRANSCRIPT OF HEARING RE ORDER TO SHOW CAUSE
          BEFORE THE HONORABLE CECELIA G. MORRIS
              CHIEF UNITED STATES BANKRUPTCY JUDGE
```

```
APPEARANCES:                    STUART I. DAVIS, ESQ.
                                1960 Williamsbridge Road
                                Bronx, NY  10461

                                MR. BENJAMIN E. HERBST
                                1610 52nd Street
                                Brooklyn, NY  11204

                                MR. MILTON REISS
                                606 Leonhardt Road
                                Becket, MA  02113
```

```
Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1          (Proceedings commenced at 10:32 a.m.)

2                THE COURT:  11-37738, Joseph Lipschitz.

3                MR. REISS:  Good morning, Your Honor.

4                THE COURT:  Are you pro se?

5                MR. REISS:  Yes.

6                THE COURT:  Raise your right hand.

7          (Mr. Reiss is sworn.)

8                THE COURT:  State your full name.

9                MR. REISS: My name is Milton Reiss.

10               THE COURT:  And your address, please.

11               MR. REISS:  606 Leonhardt Road, Becket,

12     Massachusetts.

13               THE COURT:  And your position in this is that you

14     are the landlord in a piece of property of Joseph --

15               MR. REISS:  I was.

16               THE COURT:  You were.

17               MR. REISS:  Yes.

18               THE COURT:  Okay.  State your name.

19               MR. DAVIS:  Stuart Davis.

20               THE COURT:  And with you is?

21               MR. DAVIS:  I'm sorry?

22               THE COURT:  And who's at the counsel table with

23     you?  Who are you?

24               MR. HERBST:  My name is Benjamin Herbst from the

25     Community Council of Brooklyn and I'm here as a witness to

1    shed light on the matter of what happened here, and I have

2    letter from our executive director and my own letter, which I

3    would like to read into the record.

4              THE COURT:  I think you'd better be quiet for a

5    moment, because you're getting me angry.

6              Raise your right hand.

7              MR. HERBST:  Oh, I'm sorry.

8              THE COURT:  No.  You're getting me angry because I

9    know the facts.

10             THE COURT:  Raise your right hand.

11             MR. HERBST:  Oh.

12         (Mr. Herbst is sworn.)

13             THE COURT:  State your full name.

14             MR. HERBST:  Benjamin Herbst, H-E-R-B-S-T.

15             THE COURT:  And your address, please.

16             MR. HERBST:  5025 17th Avenue.  That's a home

17    address.

18             THE COURT:  Mr. Davis, I understand that I have

19    something from you that you gave your ECF password and name

20    to someone.  Is that correct?

21             MR. DAVIS:  That's correct, Your Honor.  I did file

22    a statement, Your Honor.

23             THE COURT:  I saw it.

24             MR. DAVIS:  I understand.  I do have something else

25    to add in regards to mitigation that I could not put into the

1    response papers due to the confidentiality of it because it

2    relates to a medical situation with a third party.  If you

3    would permit me to approach, Your Honor, I can explain it to

4    you.

5              THE COURT:  No.  I'll tell you what.  You have

6    admitted that you compromised the one thing that everybody in

7    this courtroom that's a lawyer should hold dear.  That's your

8    signature.

9              And that's what you gave up.  When you gave

10   somebody else your password, you gave up your signature.  You

11   u let somebody else say whatever they wanted to say in your

12   name, and that's what it is.

13             MR. DAVIS:  Well, Your Honor, these were people

14   that were working -- doing work for me, through my office.  I

15   don't believe that --

16             THE COURT:  It doesn't work that way.  You let them

17   do it.  You didn't supervise it.  You didn't pay them.  You

18   didn't stand there and watch it.  It doesn't work that way.

19             MR. HERBST:  Your Honor, going along with --

20             THE COURT:  It's not your turn.

21             MR. HERBST:  Okay.

22             MR. DAVIS:  I understand what you're saying, Your

23   Honor, but in an office situation where there were other

24   people doing work, every document is not necessarily filed --

25             THE COURT:  Mr. Davis, it's 9011.  It's yours.  I

5

1    don't care if you have 3,000 people working for you.  It's

2    your signature.  It's your responsibility under Rule 9011,

3    and don't speak right now, I'm not ready to hear from you.

4              MR. DAVIS:  I understand, Your Honor.  I don't know

5    what else to say other than I can't necessarily disagree with

6    you.  I did file a response.  I do have --

7              THE COURT:  Do you understand how many bankruptcy

8    petitions were filed against this person?  This involuntary

9    that you actually represented in another matter?

10             MR. DAVIS:  Yes, Your Honor.  Obviously I'm aware

11   of it.

12             THE COURT:  On its face, on it's face that's cause

13   for disbarment.  You represented two -- you represented a

14   diversing interests against your own client.

15             MR. DAVIS:  Unwittingly, Your Honor.

16             THE COURT:  The one thing, and the Supreme Court

17   has spoken on this very clearly, is the one thing that you

18   owe a client, is loyalty.  And in this matter you didn't give

19   your client loyalty.

20             Now, Mr. Herbst.  Is that your name?

21             MR. HERBST:  That's my name, Your Honor.

22             THE COURT:  Let's hear what you have to say because

23   you're the one that actually stole his integrity.

24             MR. HERBST:  In a way, yes, Your Honor.  But by way

25   of litigation explanation I would like to explain it.  We

6

1    were on -- the Community Council.  I have a letter here from

2    --  we do it a lot --

3              THE COURT:  Put it right here on this thing so we

4    can see it.  Can you bring it up to this?

5              MR. HERBST:  Sure.

6              THE COURT:  It's called an ELMO.  Put it on there

7    as if you can read it.  Face it -- right there.  Right there.

8              MR. HERBST:  And I'll take another copy and read

9    from it.  Now let me explain the organization.  It's called

10   Council for Community Preservation.  It's called the

11   Community Council.

12             It operates out of Brooklyn, out of Monsey, New

13   York and other -- two other locations.  We assist the

14   citizens of our communities that we serve in education,

15   financial, food, health, housing, legal, food stamps, what

16   have you.  It's prevalent these types of government sanction.

17             One of the service we present that I run is the

18   legal referral service.  And that is run under the judiciary

19   law, 495 of the State of New York, which permits a not-for-

20   profit organization to indulge in the type of service we do.

21             We have 24 --

22             THE COURT:  That doesn't mean you get to file in

23   the court.

24             MR. HERBST:  I'm getting there.

25             THE COURT:  You are not a lawyer.

1          MR. HERBST:  May I explain?  That's what I'm

2     getting to.  We are --

3          THE COURT:  This is federal court, not state court.

4     Don't ever forget that.

5          MR. HERBST:  Yes, I do and I will explain that,

6     Your Honor, how we go to the point if you give me a chance to

7     say --

8          THE COURT:  I'm listening.

9          MR. HERBST:  Yes.  What happened is we've been an

10    organization who hasn't changed their name back, going 40

11    years.  And we have attorneys do pro bono work, cheaper --

12    work for less the money.

13         THE COURT:  If you'll wait for just one moment?

14         MR. HERBST:  Sure.  All right.

15         THE COURT:  Mr. Small.  Would you join us at

16    counsel table?  I'm sorry to do this to you but I think I'm

17    going to hear something that the U.S. Trustee might be

18    interested in.

19         MR. SMALL:  And I think so also, Judge.  I will

20    note this does appear to be in the context of an involuntary

21    proceeding so while --

22         THE COURT:  I understand.

23         MR. SMALL:  Okay.  Understood.

24         THE COURT:  And I understand that.  But there seems

25    to be more to this issue.

8

1          MR. SMALL:  Oh, I'm not resisting.

2          THE COURT:  Just so you know, Mr. Small is with the

3     Department of Justice --

4          MR. HERBST:  That's correct.

5          THE COURT:  -- through the United States Trustee

6     program.  You may be seated, Mr. Reiss.  You don't have to

7     stand up until I tell you to.

8          MR. HERBST:  Okay.  If I may --

9          THE COURT:  Yes.

10         MR. HERBST:  -- continue.  In this organization the

11    department that is mainly legal referral, and we also work in

12    conjunction with one of our operations that we have under our

13    sister organizations is a trade school.

14         One of the trades that we taught, up until about

15    now because we don't have the interest of classes, is

16    paralegal work.

17         The lawyers that we've used -- even before they

18    became lawyers, we have law students, and they can

19    intermingle where they do work as when they become attorneys,

20    this is two things, they've done work for us for over 20

21    years and as well as other 20 lawyers.

22         It's so unfair what happened to him.  But let me

23    explain the situation.  What --

24         THE COURT:  It is not unfair.  You stole his

25    integrity.  Do you not understand that?

1           MR. HERBST:  It's in my letter.  Can I finish?

2           THE COURT:  His integrity.  Do you not understand

3     the word integrity?

4           MR. HERBST:  Sure.

5           THE COURT:  You stole his integrity.

6           MR. HERBST:  Your Honor, as I said, I understand

7     that.  But let me get to where we got there.

8           When electronic filing came out a couple of years

9     ago, and you have to remember, Your Honor, everything was

10    done going through court.  I don't have to tell you.  Your

11    Honor, did that.

12          When electronic came out, we have different

13    lawyers, they had a right to send students, their staff,

14    students, to go for training.

15          We were under a preposition that anybody who does

16    work for any given attorney has a right to access and file

17    papers that he sanctions.

18          Now the system, the way it's set up to this day,

19    Your Honor -- please let me finish -- is such that you can go

20    on a website under Mr. Davis, just given for instance, and

21    file papers and specifically state that he is not the

22    attorney of record for that person.  So --

23          THE COURT:  No.

24          MR. HERBST:  That's the case.

25          THE COURT:  That word is no.

1                    MR. HERBST:  Well, I --

2                    THE COURT:  Mr. Herbst, I'm going to have to stop

3         you right there.  You need a lawyer.

4                    MR. HERBST:  I'm okay to state what I'm saying.

5         I'll take the legal jeopardy.

6                    THE COURT:  If you --

7                    MR. HERBST:  I'm telling you right now, I can have

8         the paperwork.  You can file -- any lawyer can file papers on

9         ECF, whether it's the bankruptcy court or in federal court

10        and state in there there's a question comes up, "are you the

11        attorney for the person you're filing?"  It says yes or no.

12        There's attorneys here.  Some will remember, but I can

13        represent to you under oath, that this is a choice.

14                    Now if you look, Your Honor, may I --

15                    THE COURT:  I wrote the program.

16                    MR. HERBST:  Your Honor, so you know that there's a

17        choice.

18                    THE COURT:  No, there is not.  The program is

19        written for lawyers.  If you're pro se you have to come to

20        court.

21                    MR. HERBST:  Yes, true but --

22                    THE COURT:  And you did not.

23                    MR. HERBST:  That's true.

24                    THE COURT:  And you have not listened.

25                    MR. HERBST:  We found it out --

1          THE COURT:  And you have not listened to me.

2          MR. HERBST:  I know, but I think I --

3          THE COURT:  No, I want you to listen to me.  You

4     have stolen this man's integrity.  Do you not understand

5     that?

6          MR. HERBST:  I do now, Your Honor.

7          THE COURT:  You took his word.  You took his name

8     and you used it.  And you used it in a way that was wrong.

9          MR. HERBST:  I admit that, but you learn too late.

10    That's why I want to read the letter into the record.

11    Sometimes you do things on the presumption that there's

12    nothing wrong because you chose that he is not the attorney.

13          And, Your Honor, I ask you please to run up the

14    petition and ask you, who is your attorney.  It says, "no

15    attorney."  Mr. Davis -- there's no ask for Mr. Davis.  His

16    name is not mentioned --

17          THE COURT:  You abused the bankruptcy --

18          MR. HERBST:  Yes.

19          THE COURT:  -- process, period, by filing four

20    petitions.  You filed two here and you filed two there.  So

21    not only did you absolutely ruin his integrity --

22          MR. HERBST:  That's only one case, Your Honor.  His

23    name --

24          THE COURT:  It's four cases.

25          MR. HERBST:  Not with his name.  Your Honor, I

12

1    never --

2              THE COURT:  Do you not understand?  There are two

3    different things I'm talking about.  You ruined his integrity

4    and you abused the bankruptcy process.  Do you not understand

5    that you did two things very wrong?

6              MR. HERBST:  I understand it now, Your Honor, but I

7    didn't understand it then.

8              THE COURT:  Now?

9              MR. HERBST:  Well now, since you came out.  Other

10   judges when be confronted with this situation, they didn't

11   admonish, didn't say boo.  There is -- Mr. Davis --

12             THE COURT:  They're not me and I teach ethics.

13             MR. HERBST:  Your Honor, I understand it now.  We

14   stopped that and I think the bankruptcy court --

15             THE COURT:  You're about to pay a lot of money and

16   you just admitted that you did it all wrong.  So you're about

17   to write some checks.

18             MR. HERBST:  Your Honor, I asked, you know, for

19   mitigation that in the end these people could have gone down

20   to court, did it, and he's doing it since.

21             THE COURT:  They came to court.  They came to

22   court.  They were in my court all the time.  And you weren't

23   here, and neither was he.

24             MR. HERBST:  I don't have to be -- I'm not a party

25   here.  I just came here to tell you why we're here, what

13

1    brought us here.  Your Honor, if I may, for the record --

2              THE COURT:  You're digging the hole deeper and

3    deeper.

4              MR. HERBST:  That's okay.  I've been around this in

5    legal, you know, 40 years and plus, so I know what I'm

6    digging and I know what I'm climbing out.

7              I'm here to tell the Court that it didn't look as

8    bad as it looks now after Your Honor brought it to our

9    attention.  We had students who were taught, they went -- and

10   to teach --

11             THE COURT:  Do you realize how many students you've

12   taught to steal someone's integrity?

13             MR. HERBST:  No, it was not considered stealing

14   because they indicated they --

15             THE COURT:  It is stealing.

16             MR. HERBST:  No, it's not considered stealing.

17             THE COURT:  It's stealing.

18             MR. HERBST:  Well, now it is, but it was not

19   because --

20             THE COURT:  It was then.

21             MR. HERBST:  It's a matter of getting into the

22   system to file.

23             THE COURT:  No.

24             MR. HERBST:  And it was --

25             THE COURT:  You have to come to court if you're pro

1    se.

2            MR. HERBST:  We did not know that.  We did not

3    know --

4            THE COURT:  Whether you know it or not, you had a

5    lawyer that should have been looking over your shoulder and

6    telling you that.

7            MR. HERBST:  But he was not the attorney of record

8    for anything.

9            THE COURT:  Then why would you using his password?

10           MR. HERBST:  Just to use it as an access to the

11   system.

12           THE COURT:  It doesn't work that way.

13           MR. HERBST:  That we find out from you.  Fifteen

14   other bankruptcy attorneys in every district that we did it,

15   never said anything.  So now because of you we stopped it.

16   We went back to the old times --

17           THE COURT:  I'd like to know the name.

18           MR. HERBST:  -- and we're telling the people to go

19   file --

20           THE COURT:  Excuse me.  I'd like the names of all

21   those other attorneys that used it.  You're under oath.  Tell

22   me their names.

23           MR. HERBST:  Well, we didn't know that.  We

24   stopped.  We stopped.  Because of you --

25           THE COURT:  Tell me their names.

1             MR. HERBST:  -- and Mr. Davis.

2             THE COURT:  You're under oath.  Tell me their

3       names.

4             MR. HERBST:  Your Honor --

5             THE COURT:  You're under oath.

6             MR. HERBST:  -- I invoke my right, my privilege, my

7       Fifth Amendment privilege.

8             THE COURT:  There's no such thing as a Fifth

9       Amendment privilege when you're in civil court.

10            Yes, there is, but never mind.

11            MR. HERBST:  There is, Your Honor.  Sure is.

12            THE COURT:  Speak to Mr. -- You're going to be

13      speaking to Mr. Small, though, because he's going to look

14      into this.

15            MR. HERBST:  Whatever Your Honor directs me, but I

16      quote -- can I read into the record my letter to the Court

17      and the letter from my boss?  So -- so the record is clear

18      because --

19            THE COURT:  Did you put it into the record?

20            MR. HERBST:  And could I read it, Your Honor?

21            THE COURT:  No.  You're not going to read it to me.

22      I'm not going to stand here and listen to you read --

23            MR. HERBST:  Okay.  Now let me --

24            THE COURT:  -- what you've done.

25            MR. HERBST:  You asked --

16

1          THE COURT:  You've done this to other people?

2     You've filed involuntary bankruptcy petitions against other

3     people.

4          MR. HERBST:  Well, first of all, when you say I did

5     it, I don't do it.  It's clerks, students that do the actual

6     work.  So to do the actual filing in the office.

7          THE COURT:  Excuse me.  I have --

8          MR. HERBST:  It's under my direction.

9          THE COURT OFFICER:  All rise.

10         THE COURT:  You need to sit down.

11         You have invoked the Fifth.  You have invoked it

12    for the wrong reason but I am accepting you invoking the

13    Fifth Amendment.  Mr. Small -- you may be seated.

14         MR. HERBST:  Your Honor, can we put in the record,

15    these two letters?

16         THE COURT:  If you will hand them up we'll put them

17    in the record.  We will scan them and they will go in the

18    record.

19         Just so you know, from what you've said to me, I

20    believe Mr. Small, I don't know who you call but I know I

21    call the FBI.  So --

22         MR. SMALL:  Your Honor, we certainly have our own

23    internal procedures.

24         THE COURT:  I think you should do your own internal

25    procedure.  From what I've heard today -- and Mr. -- what's

1    your name again?

2                MR. HERBST:  Herbst.

3                THE COURT:  Herbst.  Has invoked the Fifth.  He

4    invoked it for the wrong reason, but he did invoke the Fifth

5    Amendment.  I do believe there is a criminal prosecution here

6    for bankruptcy fraud, and I believe it sounds like there may

7    be other fraud.

8                MR. SMALL:  The Court may wish to notify the U.S.

9    Attorney of the invocation of the Fifth Amendment.

10               THE COURT:  Okay.  I will.  I will notify the

11   United States attorney of that.  I have never in my career as

12   a judge heard someone basically confess to a crime in front

13   of me.

14               MR. HERBST:  And, Your Honor --

15               THE COURT:  Now then, you've invoked the Fifth.  I

16   think you better stay invoking the Fifth.

17               MR. HERBST:  That means I didn't admit anything,

18   Your Honor.  I invoked the Fifth or whatever --

19               THE COURT:  You said a lot before you invoked the

20   Fifth.

21               Now then, Mr. Stuart, Mr. Reiss, we will deal with

22   you.  How many times have you been here, Mr. Reiss?

23               MR. REISS:  Once before this.

24               THE COURT:  So this is your second time here?

25               MR. REISS:  Yes, Your Honor.

18

1          THE COURT:  But you also had an attorney that came,

2     is that correct?

3          MR. REISS:  Yes, I had an attorney in the housing

4     courts.

5          And may I add that when we went to housing court

6     for the trial, Mr. Herbst represented himself as Stuart

7     Davis, and he argued before the Court.

8          THE COURT:  Calling himself Stuart Davis?

9          MR. REISS:  Yes, that's correct.  As far as I

10    understand it.  And my lawyer afterward told the judge at

11    another time that this was true and they went in to check him

12    whatever they had to.

13         THE COURT:  I have to tell you in my entire career

14    I have never seen something like this.  Mr. Davis --

15         MR. DAVIS:  Yes, Your Honor.

16         THE COURT:  --  You've been had.  Your integrity

17    has been compromised.  Your own personal integrity has been

18    compromised and basically your identity to this Court has

19    been stolen.

20         MR. DAVIS:  I'm well aware of that, Your Honor.

21         THE COURT:  Was it also stolen for the Eastern

22    District of New York?

23         MR. DAVIS:  Presumably yes, Your Honor.

24         THE COURT:  Wow.

25         MR. DAVIS:  I would though, request -- I mean, I

19

```
 1    was -- what I did was not necessarily appropriate.
 2              THE COURT:  Not necessarily?  Wrong choice of words
 3    to me right now.
 4              MR. DAVIS:  I'm sorry.  It was not appropriate -- I
 5    would just hope that Your Honor would take into account the
 6    fact that even though I gave up the password, which was not
 7    appropriate, I did not perpetrate directly any of these
 8    wrongful acts, other than giving up of the password.
 9              THE COURT:  Other than giving up everything that is
10    sacred to anybody that believes in their own honesty.
11              MR. DAVIS:  I understand that, Your Honor.
12              THE COURT:  Yes, sir.  Did you want to say
13    something?
14              MR. REISS:  Yes, Your Honor.  He also threatened a
15    city marshal.  I have a document --
16              THE COURT:  Who is he?
17              MR. REISS:  According to this it's from Stuart.
18    I --
19              THE COURT:  Would you put it on the --
20              MR. REISS:  Sure.
21              THE COURT:  All right.  So it's Mr. Davis's --
22              MR. REISS:  Yes.  And if you -- I can read some of
23    this for you.  It's really outrageous.
24              THE COURT:  Would you show me the signature page?
25              MR. REISS:  Mr. Davis, is that your signature?
```

1         MR. DAVIS:  No, Your Honor, it is not.  And as a

2    matter of fact, Your Honor, next to the signature there is a

3    little scribble that would appear to indicate that somebody

4    signed my name.

5         THE COURT:  Do you recognize that scribble?

6         MR. DAVIS:  No, I do not, Your Honor.

7         THE COURT:  If you will turn back, will you put the

8    letterhead back up?  Just turn and put the letterhead back

9    up.  Is that your letterhead, Mr. Davis?

10        MR. DAVIS:  No, it is not, Your Honor.  I have had

11   an office at 715 Church Avenue in the past.  My primary

12   office is 1960 Williamsbridge Road.

13        THE COURT:  Stand and address the Court.

14        MR. DAVIS:  I'm sorry?

15        THE COURT:  Stand when you address the Court.

16        MR. DAVIS:  I apologize.  I have had an address in

17   the past at 715 Church Avenue in Brooklyn.  I rarely use that

18   address.

19        It was used for work that was done for Mr. Herbst

20   and his organization, where I was directly repaying and did

21   do the physical work.  It was not related to bankruptcy work,

22   Your Honor.  It was related to real estate work.

23        THE COURT:  Is that your e-mail address?

24        MR. DAVIS:  No, Your Honor.

25        THE COURT:  Did you give Mr. Herbst an ability to

1      sign letters on your behalf?

2                  MR. DAVIS:  No, Your Honor.

3                  THE COURT:  Mr. Reiss, do you now have possession

4      of this property?

5                  MR. REISS:  Yes, I do, Your Honor.  Your Honor, the

6      property was also broken into because Mr. Lipschitz was not

7      able to get all his belongings out.  You know, he was still

8      there.  And he went to court because he wasn't satisfied with

9      me allowing him supervised entry to get his stuff and the

10     judge just got very angry and said he has no right to enter

11     it.  So --

12                 THE COURT:  The property at all. So it was then

13     broken into?

14                 MR. REISS:  And of course his computer stuff was

15     all gone and so I don't know.

16                 THE COURT:  Do you have a copy of the letter that

17     you now have on the -- is that a copy that the Court may

18     have?

19                 MR. REISS:  A letter?

20                 THE COURT:  What you have right there.

21                 MR. REISS:  No, you can have this.

22                 THE COURT:  If you will please hand that up?  What

23     else would you like to say?

24                 MR. REISS:  Your Honor, I just want to say that

25     this Court has been abused and it will continue being abused.

22

1    I don't know if Mr. Davis had anything to do with it.  At

2    this point, I don't know, but I suspect.  And this will go on

3    in the future.

4           And I feel that either -- if it's found out that

5    Davis had something to do with it, Mr. Davis had something to

6    do with it, I would think this person is a person who

7    shouldn't be practicing law; should be disbarred.  That's my

8    feeling.

9           THE COURT:  Okay.  Mr. Davis, do you want to add

10   anything?  You may be seated, sir.

11          MR. DAVIS:  I guess, Your Honor, I do have certain

12   things that I could say that would attempt to mitigate my

13   lack of having my hands on, if you will.

14          THE COURT:  Would you give someone your ATM number?

15          MR. DAVIS:  Honestly, if I trusted them, yes.

16          THE COURT:  Well --

17          MR. DAVIS:  Okay?

18          THE COURT:  -- I think you learned a lesson today.

19   I don't think I'd give my ATM number to anybody.

20          MR. DAVIS:  I understand, Your Honor.  I've learned

21   a very hard lesson.

22          THE COURT:  Mr. Reiss, let me ask you one more

23   question.  You're here today because you can no longer afford

24   an attorney?

25          MR. REISS:  That's correct, sir.

1          THE COURT:  And where did you come from here?

2          MR. REISS:  I came from Becket, Massachusetts,

3     about 85 miles from here.

4          THE COURT:  Okay.  You may be seated.  An

5     involuntary petition was filed against a debtor and the

6     debtor was Joseph Lipschitz.

7          On September the 28th, 2011 this was the fourth

8     involuntary petition filed against the debtor that year.

9     Emanuel Goldsmith is the petitioning creditor on three of the

10    four petitions.  Each of the four petitions was uploaded to

11    ECF by Stuart Davis, Esquire.

12         MR. HERBST:  Your Honor, I respectful disagree.  It

13    was not by Mr. Davis; only on one instance, Your Honor.  Just

14    for the record to be clear.  I checked that out.

15         THE COURT:  That's not true.  We've checked the

16    record.  We see the passwords, we know what the passwords

17    are.  We know where they come from.  The same password from

18    Mr. Davis's office was used on all four petitions.  And trust

19    me, we know the system.

20         According to the motion papers filed this was the

21    third presented petition filed to prevent this landlord, Mr.

22    Reiss, from evicting the debtor and obtaining possession of

23    the apartment.

24         Milton Reiss, one of the owners of the apartment

25    where the debtor was a monthly tenant, on April the 26th,

24

1    2010 landlord served the debtor with 30 days notice.  The

2    debtor's tenancy was terminated as of May the 31st, 2010.

3    The landlord then commenced a hold over proceeding in housing

4    court in Kings County.

5         The debtor, Mr. Lipschitz, filed his answer through

6    his attorney, Stuart Davis.

7         On February the 7th, 2011, the landlord was issued

8    a decision and judgment in favor -- in his favor in the

9    amount of 74,000 by the Housing Court.

10        On May the 18th, 2011 a warrant for eviction was

11   issued and the eviction was scheduled for June 7th, 2011.

12        On the eve of the second scheduled eviction Emanuel

13   Goldberg filed an involuntary petition with the help of

14   Attorney Stuart Davis in the Southern District of New York,

15   Poughkeepsie Division.

16        According to the landlord the petitions are

17   identical.  The Court dismissed this filing on September the

18   21st, 2011.  The second involuntary filing against this

19   debtor was in the Southern District of New York, and the

20   third of a total of four petitions in one year.

21        Two other involuntary petitions were filed in the

22   Eastern District of New York.  The first involuntary petition

23   was filed against the debtor on June 2nd, 2011 by Emanuel

24   Goldsmith and by his attorney.

25        Just so you know, we do understand, Mr. Herbst,

25

1   that you say it wasn't used.  Mr. Davis's password was used

2   on all four petitions.

3            The Court granted a motion for relief from stay on

4   the record of the July 12th, 2011 hearing so the debtor's

5   landlord could proceed with a warrant of eviction against the

6   debtor and an order was entered August the 3rd.

7            On August the 1st the Court issued an order to show

8   cause why an order should not be entered dismissing the case

9   for lack of prosecution.  The summons was never served upon

10  the debtor.

11           On August the 16th, the petitioning creditor

12  withdrew the case and the case was closed October the 20th,

13  2011.

14           The second petition was filed against the debtor on

15  August the 17th, 2011, by Emanuel Goldsmith, by and through

16  his attorney, Stuart Davis.

17           On August the 18th the clerk's office issued a

18  summons.

19           On September the 2nd, the Court issued an order to

20  show cause, why the case should not be dismissed for failure

21  to serve a summons.  Neither Mr. Goldsmith nor Mr. Davis

22  appeared at the hearing on September the 13th, 2011, and the

23  case was dismissed via an order entered on September the

24  21st, 2011.

25           The third involuntary petition was filed against

1    the debtors on September the 28th, 2011, by the same

2    petitioning creditor, Emanuel Goldsmith.  Emanuel Goldsmith

3    appeared on the electronic docket as a pro se creditor, but

4    the involuntary petition was uploaded to ECF by Stuart Davis.

5         A summons was issued by the clerk's office on

6    October the 6th.  No affidavit of service was filed.  On

7    October the 6th debtor's landlord Milton Reiss, moved for an

8    order to show cause against the debtor.  The order to show

9    cause ordered Emanuel Goldsmith, Stuart Davis, and Joseph

10   Lipschitz to show cause why an order should not be entered,

11   lifting the stay so the landlord could proceed with the

12   foreclosure.

13        The case was refiled on September the 28th, 2011.

14   And at an October the 18th, 2011 hearing the court ran an *in*

15   *rem* relief for the landlord and entered an order to show

16   cause directing the petitioning creditor and his attorney,

17   Stuart Davis, to appear and show cause, why they should not

18   be held in contempt and sanctioned pursuant to 11 U.S.C.,

19   Section 329, Federal Rule of Bankruptcy Procedure, 9011.28

20   U.S.C. 1927 and the inherent powers of the Court.

21        For allegations made on the record of the October

22   18th, 2011 hearing and for failing to appear at that hearing,

23   and failing to serve the summons as in this proceeding, and

24   any other relevant provision of the bankruptcy code and

25   rules, the amount of damages incurred by Mr. Reiss by virtue

27

1    of Davis and Goldsmith commencing the initial proceeding, and

2    attorney's fees incurred by Reiss in connection with making

3    the instant motion.

4           At the January 24th, 2004 hearing the Court granted

5    fees and costs to the landlord and held Mr. Davis and Mr.

6    Goldsmith in contempt of court.  Mr. Davis was required to

7    pay $1,000 to the Court as sanctioned, and Mr. Goldsmith was

8    required to pay $1,000 to the Court as a sanction.  Both were

9    ordered jointly and severally liable for his fees.

10          Mr. Davis was sent a third order to show cause,

11   directing him to appear at this hearing and be prepared to

12   address the following: the failure to appear at previously

13   hearings, his purpose in repeatedly filing involuntary

14   petitions, his representation of the debtor in a

15   landlord/tenant dispute, and the apparently conflict

16   representing the petitioning creditor in this action, his

17   violation of ECF protocols.

18          Mr. Davis, do you have anything you wish to add to

19   your failure to appear at previous hearings?

20          MR. DAVIS:  I was under the belief on a number of

21   those occasions that I was not the attorney for the debtor.

22   I'm (indiscernible) at the creditor.  Because I had never

23   filed the petitions I had never met the individual, et

24   cetera.  I have been well instructed that my supposition was

25   entirely incorrect.

1          THE COURT:  Did you receive those orders to show

2     cause?

3          MR. DAVIS:  I'm not sure, Your Honor.  I'm not

4     sure.  I may have.  I believe I may have even had one or two

5     conversations with one of your law clerks in regards to

6     those.

7          I do know that for a period of time the Court was

8     using an incorrect address for me, the 2931 Westchester

9     Avenue.

10          THE COURT:  And that was the one that you

11     registered your ECF with and you didn't change it?

12          MR. DAVIS:  No, that was changed, Your Honor.  That

13     was changed as soon as I opened up my office at 1960

14     Westchester Avenue.  That was changed.  The fax number that I

15     had was changed.

16          THE COURT:  It's not a fax number.

17          MR. DAVIS:  I made those changes finally, Your

18     Honor.

19          THE COURT:  It's not a fax number.

20          MR. DAVIS:  I'm sorry?

21          THE COURT:  It's not a fax number.  It's the ECF

22     address.

23          MR. DAVIS:  Oh, no, I understand, Your Honor.  I

24     understand.  But there were other changes made aside from the

25     address at that time.

29

1          THE COURT:  Okay.  Do you have anything you wish to

2  -- okay, I've heard you on that.  Do you have anything to

3  address your purpose in repeatedly filing these involuntary

4  petitions besides what's on the record today, that Mr. Herbst

5  and his -- whoever is involved with him did?

6          MR. DAVIS:  The only thing I could say somewhat in

7  mitigation, Your Honor, and not that it's an excuse, but I

8  have -- and this is really what I wanted to not put on the

9  record, but I feel I have to then, I've been a caregiver to

10  my wife the past four years, who has basically been getting

11  chemotherapy two to three times a month the last three, three

12  and a half years.

13          Aside from what it does to her, me as her

14  caregiver, primary caregiver, it puts a tremendous amount of

15  stress on me.  It at times makes me lose my focus, and

16  probably ignore things that should not have ignored, causing

17  me not to be as diligent as I probably should have been and I

18  have been in the past.

19          I guess that's all I'm in a position to say at this

20  junction, Your Honor.

21          MR. HERBST:  Your Honor, if I may?

22          THE COURT:  No, you may not.

23          MR. HERBST:  For the record.  He didn't know about

24  it.  None of the --

25          THE COURT:  Sir, I didn't give you permission to

1    speak. And you have invoked the Fifth and I recommend you

2    stay invoking the Fifth.  Have you not heard that I am

3    actually going to be discussing this with the FBI?

4              MR. HERBST:  No problem, Your Honor.  But to the

5    extent that --

6              THE COURT:  Mr. Herbst, this is my courtroom and I

7    did not give you permission to speak.

8              MR. HERBST:  May I have permission?

9              THE COURT:  No, you may not.  Mr. Davis is speaking

10   for himself, and honestly you have tried to speak too often

11   for Mr. Davis by using his password.

12             Mr. Davis, in your representation of the debtor in

13   a landlord/tenant dispute and the apparent conflict in

14   representing the petitioner creditor in this action, do you

15   have anything you want to add on that?

16             MR. DAVIS:  Obviously not, Your Honor.  It was not

17   knowingly.  It was, in reality, unknowingly.  I can't dispute

18   the fact that it's almost *prime facie* that there is a

19   conflict.

20             THE COURT:  With not almost again.  There's no

21   mitigating adjective there.

22             MR. DAVIS:  Well, again, Your Honor, I don't

23   necessarily know what gave rise to the underlying obligation

24   between Mr. Goldsmith and Mr. Lipschitz, if there was one.

25   So depending upon that and the nature of it, there might

1    conceivably be.  I don't even know if there is a -- Mr.

2    Goldsmith is really a creditor.

3         THE COURT:  Do you happen to know Mr. Goldsmith by

4    any chance.

5         MR. DAVIS:  No, Your Honor.  Never met him.

6         THE COURT:  Okay.  Then I have to ask if there's

7    anything more you want to address on your violation of the

8    ECF protocol.

9         MR. DAVIS:  No, Your Honor, I think I've addressed

10   everything that I can address on it.  And as I said, I blew

11   it.

12        THE COURT:  And this order to show cause that I

13   brought you in on was -- one was the suspension of your right

14   to use the ECF in the Southern District of New York,

15   everything would be reported to the Committee of Grievances

16   and possible monetary sanctions.  And you understood that

17   coming in today?

18        MR. DAVIS:  Yes, I did, Your Honor.

19        THE COURT:  On March the 19th, 2012, Mr. Reiss

20   filed in response to the order to show cause directing him to

21   submit receipts and costs incurred.  He states that he drives

22   160 miles round-trip from Becket, Massachusetts, traveling to

23   these hearings.  And as we've heard today and what we know,

24   this is his second appearance.

25        He included bills from his attorney, Allison

32

1    Ferman.  The total amount of legal fees incurred by Mr. Rice

2    in litigating in the Bankruptcy Court for the Southern

3    District of New York is $3,568.

4              I am going to award him $3,568 in legal fees, plus

5    cost to reimburse him for the 160 miles traveled times two

6    for his appearance in this court and at the IRS rate for

7    milage, which I don't know what it is right now.

8              MR. DAVIS:  Fifty cents on a mile, I believe, Your

9    Honor.

10             THE COURT:  It may be more than that right now

11   because the price is up but we will make sure.

12             Mr. Davis, you filed a response that you had given

13   your ECF user name and password to Benjamin Herbst, who is

14   here, the executive director of the Council of Community

15   Preservation Inc., CCPI, that provides legal services for the

16   Orthodox Jewish community in Borough Park, Brooklyn.  And I

17   understand from Mr. Herbst, and other areas within New York

18   State.

19             Mr. Davis said he provided -- you said that you

20   provided services in the past and provided his user name and

21   password.  And, Mr. Davis, you've testified today that your

22   letterhead and signature were used without your knowledge in

23   connection with this particular individual.  Is that correct?

24             MR. DAVIS:  That is correct, Your Honor.

25             THE COURT:  You've stated in your response that

33

1    you've never represented Mr. Goldsmith in Bankruptcy Court or

2    otherwise, and then again you stated today that you don't

3    even know Mr. Goldsmith.  Is that --

4              MR. DAVIS:  That's correct, Your Honor.

5              THE COURT:  Local rule, 9011-1 states that "the

6    signing of a document -- signing of documents filed

7    electronically shall be governed by the applicable standing

8    order on electronically filed cases issued by the Court.  An

9    original signed copy of the filing shall be maintained in the

10   attorney's files.  Any password required for electronic

11   filing shall be used only by the attorney to whom the

12   password is assigned and authorized members and employees of

13   such attorney's firm."  That's pursuant to General Order M-

14   399.

15              "Use of the system accounts to file a document on

16   the system constitutes the signature of the system account

17   holder.

18              Pursuant to bankruptcy rule -- Federal Rule of

19   Bankruptcy Procedure, a court may sanction an attorney who

20   files a petition for improper purpose, such as to cause

21   unnecessary delay or needless increase in the cost of

22   litigation.

23              An involuntary case is commenced by the filing of a

24   petition on the official Form Five.  The petition is a

25   cleaning and its filing commences the case.

34

1        The filing is significant for purposes of

2    determining the effective dates of the automatic stay, and

3    the time for determining preference and other transfers.

4        Each petitioning creditor, by signing the petition,

5    makes an unsworn declaration permitted under 28, USC, 1746,

6    that the statement contained within the petitions are true

7    under the penalty of perjury.

8        The attorney or attorneys representing each

9    petitioning creditors also must sign the petition.  An

10   involuntary bankruptcy petition is filed with the clerk, a

11   copy must be transmitted to the United States Trustee under

12   Bankruptcy Rule 1002, 1-0-0-2.

13       Once the petition is filed a summons is issued and

14   service must be made upon the debtor according to Bankruptcy

15   Rule 1010.

16       Under Rule 1010 the summons and a copy of the

17   petition are served in a manner provided for service of a

18   summons and complaint by rule 7004(a) and (b).

19       7004(e), which also applies, requires that service

20   be made within 14 days within the United States.  If service

21   is not made, no order for relief can be entered.  Failure to

22   serve the summons and the involuntary petition rendered

23   improper for want of personal jurisdiction, entry for the

24   order for relief as well as the ensuing bankruptcy

25   administration.

1          Those are from the *O'Connell* decision by Judge

2    Brosman.   Judge Brosman considered whether a Court could *sua*

3    *sponte*, dismiss an order for relief which was entered against

4    a partnership, despite the fact that the summons and

5    involuntary petition had never been served on the debtor,

6    partnership, or its partners.

7          Although Bankruptcy Rule 1013 directs the Court to

8    enter an order for relief if no answer is filed to the

9    involuntary petition, within the stated time frame, Judge

10   Brosman vacated *sua sponte*, the order for relief pursuant to

11   rule 60(B)(4).  The order for relief is void for want of

12   personal jurisdiction.

13         Judge Brosman dismissed the case without prejudice

14   because the petitioning creditor expressed a desire to

15   terminate the proceeding and was unavailable, due to the

16   placement in the witness protection program.

17         She noted that ordinarily she would direct the

18   petitioner to serve his involuntary petition for where a

19   court determines that service was defective, allowing for

20   proper service to be made is preferable to dismissing the

21   case.

22         Bad faith filing.  To be eligible to file an

23   involuntary petition in bankruptcy the creditor must be the

24   holder of a claim against the debtor that is not contingent

25   or subject to a bona fide dispute.  11 USC 303(b).  While a

1    bankruptcy court may award cost or reasonable attorney's fees

2    to a debtor upon dismissal of a petition pursuant to

3    303(i)(1), damages proximately caused by the filing and

4    punitive damages may be awarded for the finding of a bad

5    faith.

6            There is a presumption that the petitioning

7    creditor under 303 act in good faith.  The alleged debtor has

8    the burden of proving bad faith by a preponderance of the

9    evidence.

10           Here we have a colluding debtor that was acting in

11   bad faith against another creditor.

12           Bankruptcy courts have an inherent and expressed

13   authority to control practice before them, which includes the

14   power to disbar or suspend an attorney from practice.

15           In order to suspend an attorney the Court must find

16   justifications by clear and convincing evidence.  The Court

17   found by clear and convincing evidence that the attorney had

18   not provided competent representation and that the conduct

19   involved dishonesty, fraud, deceit, or misrepresentation, or

20   conduct prejudicial to the administration of justice in

21   violation of New York Rules Of Professional Conduct,

22   8.4(c)and (d)."  This is in the *Dickerson* case.

23           We have no fees here.  There are no fees to

24   disgorge.  Under the New York Rules of Professional conduct,

25   1.1 competence.  "A lawyer should provide competent

1    representation to a client.  The client is owed the loyalty,

2    diligence.  And 5.5, unauthorized practice of law.  A lawyer

3    shall not aid a non-lawyer in the unauthorized practice of

4    law."

5         8.4, again, New York Rules, misconduct.  "A lawyer

6    or a law firm shall not engage in conduct involving

7    dishonesty, fraud, deceit, or misrepresentation  and (d),

8    engage in conduct that is prejudicial to the administration

9    of justice.

10        Rule 9011(c)(1)(A) states "The motion for sanctions

11   shall be filed with or presented to the Court, unless within

12   21 days after the service of the motion the challenge paper

13   claimed defense, contention, allegation, or denial is not

14   withdrawn or appropriately corrected.

15        We gave notice of this on the first order to show

16   cause.  We are now on the third order to show cause.  Is that

17   correct?

18        The first -- the Second Circuit has held that a

19   sanctionable attorney must receive specific notice of the

20   conduct alleged to be sanctionable, and the standard by which

21   that conduct will be assessed and an opportunity be heard on

22   that matter.

23        The Second Circuit emphasized that the purpose of

24   such particularized notice is to put the counsel on notice as

25   to the particular facts he must address if he's to avoid

1    sanctions.  The Court has the power under rule 9011 on its

2    own motions.

3         Sanctions for bad faith.  Judge Harden, "Bad faith

4    for the purposes of Section 105 is characterized as an

5    attempt to abuse judicial proceedings.  In determining a

6    party's bad faith the Court is required to determine if that

7    party has misrepresented facts in its submissions to the

8    Court.

9         Under Rule 9011 a Court may enter an order

10   detailing specific conduct that appears to violate the rule

11   and direct the accusing party to show cause why it has

12   violated the requirements set forth in rule Bankruptcy

13   9011(c)(1)(B).  The Court may then impose sanctions.

14        Under 105, aside from 9011 the Court has the

15   inherent power to award attorney's fees under Section 105(a)

16   in appropriate cases.  In the Second Circuit a court's award

17   of sanction is reviewed under the use of discretion.

18        The Second Circuit has also ruled that although

19   decision to impose sanction is uniquely within the province

20   of the trial court, the decision to impose sanction should be

21   made with restraint and discretion.

22        Title 28, 1927, is designed to punish an attorney

23   who so multiplies the proceedings, unreasonably and

24   vexatiously.  An award under this section is inappropriate

25   unless the showing of bad faith is clear.  Bad faith is the

39

1    touch tone of award under the statute.  Award under Section

2    1927 is proper when the attorney's actions are so completely

3    without merit as to require the conclusion that they must

4    have been undertaken for some improper purpose, such as

5    delay."

6         *In re Stevens*, 35 East 116th Street, Southern

7    District of New York, 313, B.R. 161 a 2004 case from Judge

8    Drain.  Judge Drain assessed sanctions under 28, U.S.C. 1927

9    against an attorney that allowed non-attorneys to use his

10   name to file sham Chapter 11 petitions, halting a foreclosure

11   action by a secured creditor.

12        The conduct of the debtors and their counsel in

13   that case fits squarely within the types of conduct discussed

14   by filing a last minute objection to a motion to dismiss the

15   Chapter 11 case, resulting in delaying multiple adjournments,

16   asserting arguments in opposition that had been previously

17   decided against the debtor on the merits in another court,

18   and many serious violations of the duties of a Chapter 11

19   debtor in possession, including failure to retain legal

20   counsel, retention of real estate brokers without court

21   approval, failure to keep separate books and records and

22   transfers of funds to the debtor from other entities for no

23   consideration.

24        In Judge Drain's case, in the midst of this morass

25   debtor's counsel explained that he had lent his name to a

40

1    friend.

2          I will award Mr. Reiss his legal fees, in the

3    amount of $3,568 plus cost, to reimburse him for 116 miles

4    traveled for his two appearances for each way.

5          Mr. Davis, I want to remind you, you already owe

6    this Court $1,000.

7          MR. DAVIS:  I'm aware of that, Your Honor.

8          THE COURT:  It is possible, and from what I've

9    heard from you today and what I have seen from Mr. Herbst,

10   that these order to show causes might have been apparently

11   mailed at an incorrect address.

12         The address listed on ECF where the mail was sent,

13   was 2931 Westchester Avenue in Bronx, New York, 10461.

14         The latest mail was sent on February the 24th, 2012

15   to the address, was returned to the Court as not deliverable

16   as addressed on March the 1st.

17         The package was remailed to 1960 Williamsbridge

18   Road, Bronx, New York, 10461.  This address was uncovered by

19   the clerk's office.

20         Is that your correct address?

21         MR. DAVIS:  That's correct, Your Honor.

22         THE COURT:  The package was mailed well within the

23   21 day notice period.

24         Mr. Davis, I'm struggling with what to do. How many

25   people are in your office now?

1        MR. DAVIS:  Just me, Your Honor, I'm a sole -- I'm

2    sorry.  Just me, Your Honor.  I'm a sole practitioner.

3        THE COURT:  By the way, 116 miles is not correct.

4    It should be 340 miles.  It's 85 miles each way.

5        MR. REISS:  That's right.

6        THE COURT:  So 85 times four.

7        MR. DAVIS:  If it means anything, Your Honor, I

8    think I've learned a very hard lesson by this already.

9        THE COURT:  I know, but I am going to prohibit you

10   from filing on ECF for the next 30 days.

11        I am going to prohibit you from filing any petition

12   on behalf of Mr. Goldsmith ever and the petitioning

13   creditors.  You don't know him.  Nothing.  No one but you

14   will ever use your password again.  Ever.  Not even someone

15   in your office.  I don't know that I can go that far.

16        But if you have -- you are responsible for -- I

17   don't have Mr. Goldsmith here.  He still owes this Court

18   $1,000.  If we find him, we will get it from him, but you're

19   going to pay Mr. Reiss his attorney's fees.  You're going to

20   pay his milage, and you're going to pay the $1,000 to this

21   court.

22        Mr. Reiss, you stood up.

23        MR. REISS:  Yes, Your Honor.  Historically, I would

24   certainly want to examine Mr. Davis's conduct and actions

25   before this because I have a feeling that some of the same

42

1    similar --

2              THE COURT:  Mr. Reiss, you have the ability to go

3    to the Grievance Committee yourself.

4              MR. REISS:  Yes.

5              THE COURT:  And that is up to you to do so.

6              MR. REISS:  Okay.  And also, Your Honor, you know

7    obviously this was done to delay -- with a delaying tactic so

8    that the -- you know, so that he can stay in the premises as

9    long as he wanted to.

10             And during that time he incurred another $20,000 of

11   rent during that period of time.

12             THE COURT:  That is not before me.

13             MR. REISS:  I know.  I know.  I'm just saying.

14             THE COURT:  I understand.  I will report this to

15   the Grievance Committee.  Mr. Herbst, you wish to be heard?

16             MR. HERBST:  Yes, Your Honor.

17             THE COURT:  Stand.

18             MR. HERBST:  Yes, Your Honor.  Your Honor, I just

19   want to state for the record that as Mr. Davis has pointed

20   out, you see the problem with the address, the way it's

21   written down.  The sanction, again, I believe it's

22   discretionary.

23             I don't know where the authority is because number

24   one, any sanctions --

25             THE COURT:  Mr. Herbst, you didn't listen.  I gave

43

```
 1    you all the authority I need to sanction him.

 2              MR. HERBST:  Just --

 3              THE COURT:  And I gave you chapter and verse on it.

 4              MR. HERBST:  Yes, I heard everything.  And that has

 5    to do with --

 6              THE COURT:  Mr. Herbst, you hear a lot but you

 7    certainly don't listen.

 8              MR. HERBST:  I listened.  I was -- I just wanted

 9    for the record, Your Honor, to --

10              THE COURT:  Mr. Davis?

11              MR. DAVIS:  I've accepted the sanctions --

12              THE COURT:  Thank you.

13              MR. DAVIS:  -- and such, against me.

14              THE COURT:  Thank you.

15              MR. HERBST:  I just want to say that if the

16    sanctions only applies between the debtor and the petitioning

17    creditor, there's a third party who came in and I don't think

18    these sanctions should be awarded to a party -- they have no

19    remedies.  They can sue whomever they want to sue.

20              THE COURT:  What are you talking about?

21              MR. HERBST:  They should sue -- Mr. Reiss should

22    sue Mr. Lipschitz --

23              THE COURT:  Mr. Herbst --

24              MR. HERBST:  -- but Mr. --

25              THE COURT:  Sit down.
```

1          MR. HERBST:  But Mr. Davis is not right.

2          THE COURT:  I will do the order.  Mr. Davis, once

3     your 30 days is up we will reissue you your password, but I

4     want you to come in for ECF training.

5          I will -- you will be with the clerk's office.  You

6     can spend time with them.  They will walk you through it.

7          MR. DAVIS:  Presumably that's down in Manhattan,

8     Your Honor?

9          THE COURT:  Nope.

10          MR. DAVIS:  Up here?  Yes.  Sorry.

11          THE COURT:  You better be careful what you say in

12     front of me.  It could get worse.  We'll do an order.

13          MR. DAVIS:  Well, it's just -- well, it's a long

14     distance, but it as it may, it's what I have to do.

15          The 30 days will go into effect --

16          THE COURT:  As soon as we do the order.  And I will

17     want you to pay Mr. Reiss his fees within -- excuse me, 14

18     days of the order.  Report back to me if you don't get them.

19          MR. DAVIS:  I presume the address would be in his

20     response.

21          THE COURT:  Give him your address.  Okay.

22          MR. DAVIS:  Thank you.

23          THE COURT:  1138 -- and, Mr. Small, I will

24     coordinate with you and show you what I'm going to be

25     reporting to the FBI.

1              MR. SMALL:  Okay.

2         (Court adjourned at 3:39 p.m.)

3              I, CHRISTINE FIORE, Certified Electronic Reporter

4    and Transcriber, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    *Christine Fiore*

8    _____

9    Christine Fiore, CERT

10   Fiore Transcription Service, Inc.

11   4 Research Drive, Suite 402

12   Shelton, CT  06484

13   April 10, 2012

14

15

16

17

18

19

20

21

22

23

24

25